## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **Ms. M.,** *individually and as parent and legal guardian of O.M., a minor,* | ) ) ) ) | |
| PLAINTIFF | ) ) | CIVIL NO. 2:15-cv-16-DBH |
| v. | ) ) | |
| **FALMOUTH SCHOOL DEPARTMENT,** | ) ) | |
| DEFENDANT | ) | |

## ORDER AFFIRMING IN PART AND REJECTING IN PART RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

On March 4, 2016, the United States Magistrate Judge filed with the court, with copies to counsel, his Recommended Findings of Fact and Conclusions of Law in this Individuals with Disabilities Education Act (IDEA) case. Recommended Findings of Fact and Conclusions of Law (ECF No. 27) ("R. & R. Dec.").[1]  The plaintiff filed an objection to the Recommended Decision on March 21, 2016.  I heard oral argument on May 3, 2016.

I have reviewed and considered the Recommended Decision, together with the entire record; I have made a de novo determination of all matters adjudicated

---

[1] Under section 1415(e)(2) of Title 20 of the United States Code, a parent has the right to seek review of a hearing officer's decision in federal court; the court must then "mull the administrative record, take additional evidence under certain circumstances, and base its decision on the preponderance of the evidence," <u>Lenn v. Portland Sch. Comm.</u>, 998 F.3d 1083, 1086 (1st Cir. 1993) (alteration omitted) (internal quotation marks omitted), giving "due weight" to the administrative proceedings, <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley</u>, 458 U.S. 176, 206 (1982).

by the Recommended Decision; and I agree in part and disagree in part with the recommendations of the United States Magistrate Judge (and therefore the Hearing Officer whose decision he recommended affirming).

The Hearing Officer and the Magistrate Judge were correct in treating the student's October 31, 2013, Individualized Education Program (IEP) as specifying use of the SPIRE[2] literacy program, R. at 2643; R. & R. Dec. at 11; in finding that the school department failed to provide SPIRE to the student that school year, R. at 2664-2665; R. & R. Dec. at 11-13; and in ruling that the school department's explanation that the mother objected to SPIRE (she was not convinced that it was "research based" as the IDEA requires) did not justify the school department's decision not to provide SPIRE after it had been included in the IEP, R. at 2664-2665; R. & R. Dec. at 35; see 20 U.S.C.A. § 1414(d)(1)(A)(i)(IV) (2010 & Supp. 2015); 34 C.F.R. § 300.320(a)(4) (2015) (specialized services that are provided to children with disabilities pursuant to the IDEA are to be "based on peer-reviewed research to the extent practicable").

I disagree, however, with the Hearing Officer's and Magistrate Judge's characterizations that the school department's failure to provide SPIRE was a mere "procedural violation."  R. at 2665; R. & R. Dec. at 32.  The IDEA requires the school department to provide the student with a "free appropriate public education" (FAPE).  The statute provides a clear definition of a FAPE:

> The term 'free appropriate public education' means special education and related services that–
>   **(A)** have been provided at public expense, under public supervision and direction, and without charge;

---

[2] Specialized Program Individualizing Reading Excellence.

> **(B)** meet the standards of the State educational agency;
> **(C)** include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> **(D)** *are provided in conformity with the individualized education program required under section 1414(d) of this title.*

20 U.S.C.A. § 1401(9) (2010 & Supp. 2015) (emphasis added).   Given those enumerated requirements for a FAPE, failure to provide special education and related services in conformity with the IEP as subsection (D) requires is a substantive violation, not a procedural one.   The IDEA recognizes many procedural requirements, and this is not one of them.[3]  See <u>Joaquin v. Friendship Pub. Charter Sch.</u>, No. 14-01119 (RC), 2015 WL 5175885, at *7 (D.D.C. 2015) (holding that there was no basis for the hearing officer's conclusion that a failure to provide transition services as required by the IEP "was a mere 'procedural violation' of the IDEA").

When a "procedural violation" occurs, the IDEA addresses explicitly how to assess it:

> **(ii) Procedural issues**
> In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies—
> > **(I)** impeded the child's right to a free appropriate public education;
> > **(II)** significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or

---

[3] The IDEA provides a very lengthy section on "Procedural safeguards," in which it lists things quite *un*like what happened here, things like the opportunity to examine records, to protect the rights of a child whose parents are unknown, written prior notice, use of a language native to the parents, opportunity for mediation, opportunity to present a complaint, procedures to provide due process complaint notice, development of model forms, etc.  20 U.S.C.A. § 1415(a)-(o) (2010 & Supp. 2015).

> **(III)** caused a deprivation of educational benefits.

20 U.S.C.A. § 1415(f)(3)(E)(ii) (2010 & Supp. 2015); see H.R. Rep. No. 108-779, at 219 (2003) (explaining that the language found at clause (ii) "allows procedural violations to rise to the level of a substantive violation under certain circumstances"). The First Circuit has stated that the burden is on the plaintiff to show "the harmfulness of the claimed procedural shortcomings" when there are *procedural* flaws in creating an IEP. Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994-95 (1st Cir. 1990).

But in cases other than procedural violations, the statute directs that "a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education." 20 U.S.C.A. § 1415(f)(3)(E)(i). That is the standard for substantive violations. And the statute says that a free appropriate public education is one that is "provided in conformity with the individualized education program . . . ." Id. § 1401(9); see Pollack v. Reg'l Sch. Unit 75, No. 2:13-CV-109-NT, 2015 WL 1947315, at *2 (D. Me. Apr. 29, 2015) ("Clause (i) generally requires [hearing officers] to decide cases based on whether a school substantively denied a free appropriate public education." (citing 20 U.S.C.A. § 1401(9))).

Other circuits (the parties have not cited a First Circuit case on point) have held that "the failure to perfectly execute an IEP does not necessarily amount to the denial of a free, appropriate public education," that it must be more than a "de minimis" failure, but that "a material failure to implement an IEP, or, put another way, a failure to implement a material portion of an IEP, violates the

4

IDEA." Sumter Cty. Sch. Dist. 17 v. Heffernan, 642 F.3d 478, 484 (4th Cir. 2011); accord A.P. v. Woodstock Bd. of Educ., 370 Fed. App'x 202, 205 (2d Cir. 2010) (failure must be "material"); Fisher v. Stafford Twp. Bd. of Educ., 289 Fed. App'x 520, 524 (3d Cir. 2008) (more than "de minimis"); Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007) ("A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP."); Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 349 (5th Cir. 2000) ("[A materiality] approach affords local agencies some flexibility in implementing IEPs, but it still holds those agencies accountable for material failures and for providing the disabled child a meaningful educational benefit.").[4]

This District has agreed. Pollack, 2015 WL 1947315, at *14 ("[A] material failure to provide a service contained in an IEP can constitute a substantive violation of the IDEA."); York Sch. Dep't v. S.Z., No. 2:13-CV-00042-NT, 2015 WL 860953, at *17 (D. Me. Feb. 27, 2015) (same); S.D. v. Portland Pub. Sch., No. 2:13-CV-00152-JDL, 2014 WL 4681036, at *6 (D. Me. Sept. 19, 2014) ("[T]he failure to implement a material or significant portion of the IEP can amount to a

---

[4] The District of the District of Columbia has a number of failure-to-implement opinions and, in the absence of D.C. Circuit guidance, the judges there seem to define the materiality question as a test of balancing "proportion of services mandated to those provided." See, e.g., Holman v. District of Columbia, No. CV 14-1836 (RMC), 2016 WL 355066, at *2 (D.D.C. Jan. 28, 2016); Joaquin v. Friendship Pub. Charter Sch., No. 14-01119 (RC), 2015 WL 5175885, at *4 (D.D.C. Sept. 3, 2015); Turner v. District of Columbia, 952 F. Supp. 2d 31, 40 (D.D.C. 2013); Savoy v. District of Columbia, 844 F. Supp. 2d 23, 31 (D.D.C. 2012); Wilson v. District of Columbia, 770 F. Supp. 2d 270, 275 (D.D.C. 2011).

denial of a free, appropriate public education." (alterations omitted) (internal quotation marks omitted)).

So the question is whether the failure to provide the SPIRE literacy program in the 2013-2014 school year was a material failure so as to constitute a denial of a FAPE under the IDEA, or only de minimis.[5]  Upon de novo review of the evidence in the record and giving "due weight" to the administrative proceedings,[6] Rowley, 458 U.S. at 206; Roland M., 910 F.2d at 989-90, I conclude that the school department's failure to implement SPIRE was more than de minimis and was a material failure.[7]

---

[5] Because I agree with the Hearing Officer and Magistrate Judge that the SPIRE literacy program was a part of O.M.'s October 31, 2013, IEP (and also her amended IEP in May 2014), I reject the school department's assertion that "this is really a dispute about methodology."  Def.'s Mem. of Law at 21 (ECF No. 23).  I agree with the school department that the IDEA does not give a parent the right to "compel a school district to provide a specific program or employ a specific methodology in providing for the education of their handicapped child."  Brougham v. Town of Yarmouth, 823 F. Supp. 9, 16 (D. Me. 1993) (internal quotation marks omitted).  But when, as here, the school department includes the methodology as a material part of the IEP and then fails to implement it, the failure violates the IDEA.  The school department relies on Doe v. Hampden-Wilbraham Regional School District, 715 F. Supp. 2d 185, 197 (D. Mass. 2010), but that case noted: "Significantly, there is no indication that the changes that were made to the methodologies used deviated from the requirements of the IEP."

[6] It may be that I should accord no deference to the Hearing Officer's conclusion because he applied the wrong legal standard.  See e.g., Wilson, 770 F. Supp. 2d at 275.

[7] The Hearing Officer and Magistrate Judge reached a contrary conclusion in the context of assessing this as a "procedural violation," R. at 2665, and "harmless" error, R. & R. Dec. at 32, 40.  I do agree with the Hearing Officer and the Magistrate Judge that we look at the entire IEP and, as the Magistrate Judge stated, "O.M.'s IEP encompassed an array of services, including occupational therapy, speech therapy, physical therapy, adaptive physical education, and specially designed instruction in math, as well as supplementary aids and services and a provision that O.M. be educated in a mainstream setting 58 percent of the time."  R. & R. Dec. at 36 (citation omitted).  See Allan J. Osborne, Jr. & Ralph D. Mawdsley, When Does the Failure to Implement Terms of an IEP Result in the Denial of a FAPE?, 296 ED. LAW. REP. 1, 20 (Oct. 24, 2013) ("In determining whether a school board's failure to implement aspects of a child's IEP constituted a denial of a FAPE, most courts reviewing the question placed greater weight on the whole rather than the individual parts.  Thus, a majority of courts have felt that it was more important that the overall IEP, as implemented, conferred the educational benefit called for by the U.S. Supreme Court in Rowley.").  Nevertheless, even in a broad IEP, the failure to provide individual components can be material.  That is the case here with SPIRE.  See e.g., Wilson, 770 F. Supp. 2d at 272-73, 275-76 (determining, in the context of a broad IEP for a child with multiple disabilities, that "[b]ecause [the school] almost entirely failed to provide a service that [the child's]

A structured reading program was a material element of this student's IEP. The school department did not provide SPIRE for that structured program after agreeing to do so at the October 31, 2013, IEP team meeting.  Even after the independent evaluation by Dr. Christopher Kaufman in March 2014, and the IEP team's agreement again at the May 1, 2014, meeting that SPIRE was appropriate, the school department still delayed implementation of SPIRE until September. Notwithstanding this complete failure to deliver what was promised, the Hearing Officer and the Magistrate Judge assessed the literacy services the school department provided in place of SPIRE, examined the progress the student made without SPIRE, and concluded that the failure to provide what had been promised was harmless.  As the Ninth Circuit stated in <u>Van Duyn v. Baker School District 5J</u>, 502 F.3d 811 (9th Cir. 2007), however, "the materiality standard does not require that the child suffer demonstrable educational harm in order to prevail."  <u>Id</u>. at 822.[8]  The IEP team determined twice that the extra literacy level of instruction provided by SPIRE was necessary for the student, and yet the

---

IEP team determined was necessary for his educational development, it denied him the education that the law requires.").

[8] I am aware of the irony that part of the plaintiff's supplemental record in this court is that the SPIRE program as finally provided in the 2014-2015 school year did not work.  In that context, she provided an April 2015 evaluation of this student by her former private LiPS instructor (Lindamood Phoneme Processing System) that stated that after the student left the LiPS program and engaged in the SPIRE program, her regression was "catastrophic."  R. & R. Dec. at 24.  But I do not take that asserted later ineffectiveness into account.  <u>See</u> <u>Joaquin</u>, 2015 WL 5175885, at *8 ("The Court is concerned only with whether material services mandated by [the child's] IEP were 'provided.'  To hold otherwise would be to transform the IDEA into a protector of outcomes rather than opportunities; just as a plaintiff cannot prevail on a claim that a duly formulated and implemented IEP brought about no actual educational progress, the IDEA does not recognize a defense that the proper implementation of an IEP provision would have yielded no incremental benefit." (citation omitted)).

school department failed to provide it.[9]  Without it, I conclude that the student did not receive a FAPE under the IDEA in the 2013-2014 school year.

It is true that <u>Van Duyn</u> states that "the child's educational progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the services provided."  502 F.3d at 822.  That may be so in some cases, but using that measure here would excuse this school department's unilateral decision *twice* not to implement the promised literacy program and thereby give an inappropriate license to school departments to ignore an important element of a child's IEP and be able to argue later that their substitute was "good enough."

## REMEDY

This District has recognized the availability of "retroactive reimbursement to parents for their expenditures on private school education for a child.  Such reimbursement represents a payment of expenses that the school 'would have borne in the first instance had it developed [here, implemented] a proper IEP.'" <u>S.D.</u>, 2014 WL 4681036, at *11 (citation omitted) (quoting <u>Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.</u>, 471 U.S. 359, 370-71 (1985)); <u>see</u> <u>S.Z.</u>, 2015 WL 860953, at *21-22; <u>see also</u> <u>Florence Cty. Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 15-16 (1993).  The school department recognizes that parents may obtain "reimbursement for expenses incurred in providing their child with

---

[9] I note further that, although the school department expressly proposed the "introduction of a structured reading program to [O.M.'s] IEP" in October 2013, R. at 807, and ultimately the IEP selected the SPIRE program for that structure, R. at 863, the literacy program offered throughout the 2013-2014 school year did not change from what the student was receiving before the implementation of the October 2013 IEP. R. & R. Dec. at 12 ("Falmouth did not proceed with using SPIRE, but, instead, continued the multifaceted reading program that Mosca [the special education teacher] had been using.").

a private educational service[ ] if the school district did not provide a FAPE and the private placement was proper under the IDEA." Def.'s Mem. of Law at 34-35. The school department has focused its argument *against* reimbursement on the assertion that the student received a FAPE, <u>id</u>. at 35-36—an argument I have rejected. Neither the Hearing Officer nor the Magistrate Judge dealt with the remedy issue because they both found no substantive violation of the IDEA.[10]

Judges have broad discretion in fashioning an equitable remedy in IDEA cases. <u>See</u> <u>C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.</u>, 513 F.3d 279, 290 (1st Cir. 2008); <u>Pihl v. Mass. Dep't of Educ.</u>, 9 F.3d 184, 188-89 (1st Cir. 1993); <u>Carter</u>, 510 U.S. at 15-16. An appropriate equitable remedy here is relief for the period from May 2014, when the parent took matters into her own hands to provide literary services for the child, until September 2014, when the school department ultimately made SPIRE available. In the spring of 2014, the Kaufman evaluation alerted the parent to the LiPS literacy program (which Dr. Kaufman recommended for this child), and that is when she learned that the school department was not actually providing SPIRE to her child. The school department refused to provide LiPS despite the evaluator's recommendation, the IEP team reaffirmed at the May 2014 meeting that SPIRE was appropriate, but

---

[10] The parties devote much attention to what the parent waived in December 2013, when she signed a document to avoid a January hearing. The Hearing Officer determined that the document she signed in December barred "[t]he Parent's claims for compensatory education damages from the commencement of the 2013-2014 school year through December 17, 2013." R. at 2676. After reviewing the record, and giving due weight to the Hearing Officer's conclusion, I agree that the school department met its burden of proving its affirmative defense that the parent waived claims under the IDEA for the period from the beginning of the 2013-2014 school year through December 17, 2013.

it delayed SPIRE implementation until September. The parent withdrew her child from the school department's literacy program starting in May[11] and enrolled her in a private LiPS program at the parent's expense. That was a reasonable compensatory measure to make up for the school department's failure to provide the promised literacy program and the resulting denial of a FAPE. The school department has not argued that the LiPS program was inappropriate or that a private SPIRE placement would have been cheaper.

The parent provided to the Hearing Officer invoices for LiPS services from May 5, 2014, through August 30, 2014, totaling $4,111.25.[12] R. at 603-696. In her testimony she referred to a total of "about $4,600," R. at 2803, which included mileage, but I do not find supporting documentation for her mileage in the record. Because the school department made SPIRE available starting in September, I see no justification for continuing the compensatory education payments past the August services.[13]

I therefore conclude that the parent is entitled to reimbursement of $4,111.25.[14]

---

[11] The parent sent a written notice to the school department of her intentions to remove the child from the school's literacy program on April 17, 2014, with LiPS instruction to begin in May. R. at 1305.

[12] The record contains Invoices 1 through 14. The LiPS instructor testified about an Invoice 15, Kathleen Coffin Dep. at 66 (ECF No. 19-1), but I do not have it, and it dealt with September services. I have also deducted $200 that the invoices charge for "consulting," as I see no evidence that this "consulting" involved compensatory education to the student. See R. at 620, 695 (Invoices 10 & 14).

[13] Although the parent requests that I order enough hours for the child to complete the LiPS instruction (based on the LiPS instructor's testimony that the child needs to complete LiPS in order to "develop[ ] phonemic awareness" before moving on to a program like SPIRE, which "exercises phonemic awareness," Kathleen Coffin Dep. at 81, 89), I do not find that to be an appropriate remedy at this time on this record.

[14] Nothing in this opinion is intended to indicate any view about the IEP for the 2014-2015 school year or how it was implemented.

It is **ORDERED** that the Recommended Findings of Fact and Conclusions of Law of the Magistrate Judge are **ADOPTED IN PART AND REJECTED IN PART**. Judgment shall enter for the plaintiff in the amount of $4,111.25.

**SO ORDERED.**

**DATED THIS 31ST DAY OF MAY, 2016**

                                        /S/D. BROCK HORNBY
                                        **D. BROCK HORNBY**
                                        **UNITED STATES DISTRICT JUDGE**